KUBIN, Appellee,

v.

KUBIN, n.k.a. Halbrook, Appellant.

[Cite as *Kubin v. Kubin* (2000), 140 Ohio App.3d 367.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA99–12–120.

Decided Sept. 18, 2000.

Nichols, Speidel & Nichols and *Donald W. White,* for appellee.

*Douglas A. Ball,* for appellant.

---

VALEN, Judge.

Appellant, Nicole Kubin, n.k.a. Halbrook, appeals a Clermont County Court of Common Pleas, Domestic Relations Division, judgment entry granting a motion for change of custody filed by petitioner-appellee, Lance Kubin. We affirm the judgment of the trial court.

The parties' marriage was terminated by a decree of dissolution on April 6, 1995. One son, Andrew Joseph Kubin, date of birth, January 13, 1993, was born as issue of the marriage. Pursuant to the decree of dissolution, appellant was designated as the residential parent and legal custodian of Andrew.

Lance moved the trial court for a modification of custody and parental rights on May 13, 1998. In his motion, Lance asked the trial court to grant custody of Andrew to him. After a hearing on the motion and an *in camera* interview with Andrew, a magistrate denied Lance's request for change of custody. In her decision, the magistrate stated that "both parties are fit parents and that Andrew has a good relationship with both parents." However, the magistrate found that Lance had failed to show that the harm likely to be caused by the change of environment would be outweighed by the advantages of the change of environment and denied the motion.

Lance timely filed objections to the magistrate's decision. Lance also filed a motion to show cause, alleging that appellant was in contempt of court because she had moved Andrew outside Clermont County, Ohio without giving notice to Lance or to the court, thereby preventing Lance from exercising his right to visitation. The trial court found that appellant was in contempt.

Upon review of the magistrate's decision and Lance's objections, a trial court judge reversed the decision of the magistrate and granted Lance custody of Andrew. Appellant appeals, raising two assignments of error, which we will consider together:

Assignment of Error No. 1:

"The trial court abused its discretion in overruling the magistrate's decision when the decision is supported by some credible evidence."

Assignment of Error No. 2:

"The court abused its discretion by finding that the advantage of changing custody in this case significantly outweighed the harm which would be caused by separating Andrew from his mother."

In her assignments of error, appellant asserts that the trial court erred by reversing the magistrate's decision. Appellant argues that a trial court judge must not reverse a magistrate's decision that is supported by some credible evidence. Appellant also contends that the decision to grant custody of Andrew to Lance was incorrect because the advantage of changing Andrew's environment does not outweigh the harm likely to be caused by separating Andrew from appellant.

Appellant cites our decision in *Scarborough v. Storms* (Nov. 22, 1999), Warren App. No. CA99–05–054, unreported, 1999 WL 1057229, and insists that "the review provided by Civil Rule 53 has been limited by this court" so that where a magistrate's findings are supported by some credible evidence, we may not reverse them. We disagree with appellant's interpretation of our holding in that case. In *Scarborough,* we found that it was improper for the trial court to reverse the magistrate's decision because no transcript was filed with the trial court so that it could conduct an independent review. We stated that "[i]n ruling that the magistrate's findings and decision were against the weight of the evidence, the trial court weighed the credibility of evidence and testimony [with] which it was never provided. * * * The trial court abused its discretion by sustaining the objections based upon the weight of the evidence without conducting an independent review." *Scarborough* at * 3.

In the case *sub judice,* the transcript was filed along with the objections to the magistrate's decision. In his judgment entry, the trial court judge noted that "[a] transcript of the proceeding before the Magistrate was filed with the court and reviewed." Therefore, *Scarborough* is distinguishable from this case.

When a trial court judge commits credibility determinations to a magistrate, the presumption that a subsequent credibility determination made by the trial court is correct is lessened. *Cox v. Cox* (Feb. 16, 1999), Fayette App. No.

CA98–05–007, unreported, 1999 WL 74573, at * 3–4. Nevertheless, the presumption that the trial court is correct in its judgment still exists. *Id.* at * 3

■■ When ruling on objections to a magistrate's decision, "[t]he [trial] court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter." Civ.R. 53(E)(4)(b). The trial court has the "ultimate authority and responsibility over the [magistrate's] findings and rulings." *Hartt v. Munobe* (1993), 67 Ohio St.3d 3, 5, 615 N.E.2d 617, 620. As the ultimate factfinder, the trial court judge decides "whether the [magistrate] has properly determined the factual issues and appropriately applied the law, and, where the [magistrate] has failed to do so, the trial court must substitute its judgment for that of the [magistrate]." *Inman v. Inman* (1995), 101 Ohio App.3d 115, 118, 655 N.E.2d 199, 201.

■ Appellant complains that it was improper for the trial court judge to rule on the objections to the magistrate's decisions without holding a hearing. However, Civ.R. 53 does not require a trial court to hold a hearing before ruling upon objections to a magistrate's decision. Moreover, there is no evidence in the record that appellant requested a hearing. Further, appellant failed to file a memorandum in opposition to Lance's objections to the magistrate's decision.

■ The trial court enjoys broad discretion in custody proceedings. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 416–417, 674 N.E.2d 1159, 1161. Absent an abuse of discretion, an appellate court will not reverse the trial court's decision. *Id.* at 418–419, 674 N.E.2d at 1162–1163. An abuse of discretion implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.

R.C. 3109.04, which applies to a trial court's consideration of a motion to modify custody, states:

"(E)(1)(a) The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

"(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

"(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

"(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

To summarize this Revised Code section as applicable herein, in a case where a residential parent does not agree to a change of custody, a trial court may modify parental rights and responsibilities if it finds that (1) there has been a change of circumstances, (2) modification is in the best interest of the child, and (3) any harm likely to result from a change of environment is outweighed by the advantages of the change. R.C. 3109.04(E)(1)(a).

In this case, the trial court found that there had been a change of circumstances. A pretrial order filed on August 25, 1998, indicates that "the parties have stipulated that there has been a change of circumstances." Both the magistrate's decision and the trial court judge's decision acknowledge this stipulation. At the hearing, there was testimony that appellant decided to move to Texas with Andrew, did not tell Lance about this until after the decision to move had been made, and that this move would adversely affect Lance's opportunity for visitation with Andrew. We find that there is credible, competent evidence to support the trial court judge's finding that there had been a change of circumstances.

The trial court judge found that modification of custody was in Andrew's best interest. Appellant argues that the trial court did not make this determination because the trial court, in its decision, stated that "the court finds that it is not in Andrew's best interest to be removed from the care of his mother." Although this statement creates some confusion, the trial court decision continues and states that "the court also finds that it is not in Andrew's best interest to be removed from his father." Later on in the decision, the trial court judge ultimately states that "the court finds that it is in his [Andrew's] best interest that [the] father's motion for change of custody be granted."

When determining the best interest of a child, a court considers the factors enumerated in R.C. 3109.04(F)(1), which include:

"(a) The wishes of the child's parents regarding his care;

"(b) If the court has interviewed the child in chambers * * * regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

"(c) The child's interaction and interrelationship with his parents, siblings, and any other person who may significantly affect the child's best interest;

"(d) The child's adjustment to his home, school, and community;

"(e) The mental and physical health of all persons involved in the situation;

"(f) The parent more likely to honor and facilitate visitation and companionship rights approved by the court;

" * * *

"(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent his or her right to visitation in accordance with an order of the court;

"(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

In addition to finding that it was in Andrew's best interest to grant custody to Lance, the trial court judge found that the harm likely to be caused by the change of environment was outweighed by the advantages of the change of environment. In support of both of these findings, the trial court judge noted that if custody of Andrew remained with appellant, the career aspirations of Andrew's stepfather would cause Andrew to move to different places in the country in a short period of time. In contrast, Lance was planning on staying in the Ohio area. The trial court judge also found that appellant would not encourage Lance's visitation with Andrew after moving away from Ohio, a conclusion supported by the findings of a custody investigator and a psychologist.

At the magistrate's hearing, Andrew's stepfather, Sean Halbrook, and Andrew's stepmother, Julie Kubin, both testified to their close relationships with Andrew. Appellant testified that Andrew also has a close bond with half-brother Adam, who is the son of appellant and Sean.

Sean testified that he was pursuing his dream of becoming a fighter pilot and a commercial airline pilot. To do this, Sean was working for the United States Air Force in Texas and had already moved his family there to be with him. Then the family would move to Oregon or Florida and eventually move to Cape Cod, where the family would stay for at least ten years. Testimony at the magistrate's hearing demonstrated that Lance and Julie were committed to remaining in the Cincinnati area and were planning on purchasing a house. Much of Andrew's extended family lives in Ohio.

There was evidence at the hearing that appellant has made significant decisions about Andrew's life without Lance's input. On the witness stand, appellant admitted that she moved Andrew from Batavia to Loveland schools without consulting Lance. She also admitted that she decided to move to Texas with

Andrew without any discussion with Lance. She did not even tell Lance about her family's upcoming move until after Sean had completed his preliminary training.

The findings of a custody investigation include the following statements:

"Mrs. Halbrook would not promote the relationship between Andrew and Mr. Kubin if Andrew were to continue to reside with her. It is the opinion of this investigator that it would not be in Andrew's best interest to relocate with Mrs. Halbrook."

The psychologist's report states the following:

"It is in the best interest for Andrew to remain in this geographic area in order to have both his parents involved in his life. * * * Mr. and Ms. Halbrook made plans without consultation with Mr. Kubin because they did not feel they needed to involve him. If Ms. Halbrook decides to join her husband this leaves little choice but to change custody to father and to set up a visiting schedule [similar] to the one Ms. Halbrook suggested for Mr. Kubin."

The testimony from witnesses at the hearing, as well the custody investigation and psychological report, show that appellant has not always been cooperative about visitation and that problems with visitation would increase if Andrew moved to Texas. We also note that appellant was found to be in contempt for violating the magistrate's decision by moving to Texas with Andrew without notice to the trial court thereby disrupting the visitation schedule. The evidence supports the trial court judge's findings that granting custody to Lance was in Andrew's best interest and that any harm likely to result from a change of environment is outweighed by the advantages of the change.

Admittedly, this was a difficult case because both parents love Andrew and are capable of providing a home for him. However, we find that the trial court judge's decision is supported by competent, credible evidence and does not constitute an abuse of discretion. The assignments of error are overruled.

*Judgment affirmed.*

POWELL, P.J., and WALSH, J., concur.